**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.  15-cr-00149-JLK

UNITED STATES OF AMERICA,

     Plaintiff,

v.

5.  CAROLINA ARAGON,

     Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Martha A. Paluch, Assistant United States Attorney for the District of Colorado, and the Defendant, Carolina Aragon, personally and by counsel, Robert W. Pepin, hereby submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I.    <u>PLEA AGREEMENT</u>

The defendant agrees to plead guilty to Count 1 of the Superseding Indictment, charging a violation of Title 18, United States Code, Section 286, Conspiracy to File False Claims for Refund.  The parties agree that the defendant should be ordered to pay restitution to the Internal Revenue Service (IRS) in the amount of $21,850.84.  This amount represents the actual loss to the IRS for the false tax returns submitted to the IRS as part of the charged conspiracy in which the defendant was involved.



Exhibit
1.

The government agrees to not file any additional charges against the defendant based on the information presently known to the government. In addition, the government agrees that at the time of sentencing it will move to dismiss Counts 37, 38, and 39 with respect to this defendant only. Provided the defendant does nothing inconsistent with accepting responsibility between the date of her plea and the date of sentencing, the government agrees to recommend a two-level reduction for acceptance of responsibility.

The defendant agrees to provide truthful, complete, and accurate information, and agrees to cooperate fully with the government. The defendant understands that if she provides untruthful information, or falsely testifies, she is in breach of this plea agreement, and the government reserve the right to prosecute her for perjury, to withdraw its agreement in this case, and to bring any additional charges, including those that the government agreed to dismiss, or not bring, in connection with this plea agreement. *See Ricketts v. Adamson,* 483 U.S. 1, 9-12 (1987) (plea agreement void and government permitted to reinstate original charges when defendant failed to completely fulfill [her] obligations pursuant to the plea agreement).

The defendant's cooperation will include, but is not limited to, the following:

      a. The defendant agrees to be fully debriefed, and to attend all meetings at which her presence is requested, concerning her participation in and knowledge of all criminal activities.

b.  The defendant agrees to furnish to the government all documents and other materials that may be relevant to the investigation and that are in the defendant's possession or control.

c.  The defendant agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government.

d.  The defendant agrees that she will at all times give complete, truthful, and accurate information and testimony and that she will fully and truthfully disclose all information with respect to the activities of herself and others concerning all matters about which the government inquires.

e.  The defendant consents to postponements of her sentencing, as requested by the government and as approved by the Court.  Should the defendant be required to provide testimony at a time subsequent to her sentencing in this case and should the defendant fail, at a later date, to comply with the obligation to testify, the government could seek to re-charge her on any and all counts which were dismissed as part of this plea agreement.

It is understood that the government's determination of whether the defendant has cooperated fully and provided substantial assistance, and the government's assessment of the value, truthfulness, completeness, and accuracy of the cooperation, are within the government's sole discretion.  Based on the defendant's cooperation to date, defendant's continuing cooperation, and

assuming no subsequent breach of this agreement, the government agrees, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, that it will file a motion pursuant to 5K1.1 of the Sentencing Guidelines for a downward departure. The amount of such departure is within the government's sole discretion.

The parties recognize that any departure requested by the government will be a recommendation to the Court and that the ultimate question of whether a departure is to be granted will rest solely within the discretion of the sentencing Court.

The defendant also acknowledges that she will not be able to withdraw her guilty plea in the event the Court elects not to grant any downward departure request made by the government.

This agreement is submitted to the Court for its consideration pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 12; or (3) the government appeals the sentence imposed. If any of

these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II.   **ELEMENTS OF THE OFFENSE**

In order to be convicted of a violation of 18 U.S.C. § 286, Conspiracy to File False Claims for Refund, the following elements would have to be proven by the government beyond a reasonable doubt:

*First*:  The Defendant agreed with at least one other person to obtain or aid in obtaining the payment or allowance of any false, fictitious, or fraudulent claim;

*Second*:  The Defendant knew the essential objective of the conspiracy;

*Third*:  The Defendant knowingly and voluntarily participated; and

*Fourth*: There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

*Tenth Circuit Pattern Jury Instructions (Criminal Cases)*, § 2.19 (2011 ed.) (modified for § 286 and to remove overt act requirement); *United States v. Dedman*, 527 F.3d 577, 594 n.7 (6th Cir. 2008) (holding that § 286 has no overt act requirement); *United States v. Lanier*, 920 F.2d 887, 892 (11th Cir. 1991) (same).

### III.   STATUTORY PENALTIES

The maximum statutory penalty for a conviction of Title 18, United States Code, Section 286, is as follows: not more than 10 years of imprisonment; a fine of not more than $250,000.00, or both; not more than 3 years of supervised release; and a $100.00 special assessment fee. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV.   COLLATERAL CONSEQUENCES

The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

### V.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in April 2008.

The parties agree that the government's evidence would be as follows:

In April of 2008, co-defendant Raul Caraveo was detained in the Pueblo County Jail on charges related to a tax fraud scheme.  He pled guilty to certain of these charges in September of 2008 and was later incarcerated at the Sterling Correctional Facility (SFC) on this conviction.  During his incarceration in the Pueblo County Jail and later at SFC, co-defendant Raul Caraveo orchestrated and carried out a second, nearly identical tax refund scheme with the assistance of fellow SCF inmate and co-defendant Eugene Chavez.  Co-defendant Raul Caraveo was also assisted by his wife co-defendant Sabrina Caraveo,  by his friends and co-defendants Pamila Lucero and Carolina Aragon, co-defendant Pamila Lucero's friend co-defendant Christina Portillos, fellow SCF inmate and co-defendant Conrad Archuleta, co-defendant Nancy Guzman, and others.

The scheme was carried out in the following manner:   co-defendant Raul Caraveo obtained identifying information (names, dates of birth, social security numbers) from Colorado Department of Corrections (DOC) inmates he was incarcerated with and in some instances, the inmates' family members.  The identifying

information was used by co-defendant Raul Caraveo and other inmates to generate false Forms 1040A. All returns requested a tax refund that was generated by the Earned Income Tax Credit (EITC). Returns were filed for the tax years 2006 through 2013 and contained similar wages, deductions, Earned Income Tax Credits, and refund amounts for each year respectively. The only differing information per year was the primary and dependent's identifying information and the amount requested.

Co-defendant Raul Caraveo and other inmates working with him mailed tax returns to the defendant and other named co-defendants. These defendants provided addresses to add to the returns for receipt of the refund checks, or allowed their address to be used for receipt of the refund checks.

Specifically as to the defendant, in the summer of 2012, she got word to co-defendant Raul Caraveo through mutual acquaintances to call her from prison. She did so in hopes that he would help her financially. During an August 4, 2012 phone call between the defendant and co-defendant Raul Caraveo, the defendant agreed to participate in the scheme. The defendant printed blank Forms 1040A at the public library and mailed them to co-defendant Raul Caraveo and to other inmates at co-defendant Raul Caraveo's direction. She received manila envelopes containing returns from co-defendant Raul Caraveo and other inmates. Often, she completed filling out the returns using information either mailed to her or given to her over the phone by co-defendant Raul Caraveo or others. The defendant mailed false tax returns listing her home address in Pueblo, Colorado, and the address of others, to the IRS. The defendant mailed the false returns to the IRS from Pueblo, Colorado. She received a

number of refund checks at her home address.  At times she called an IRS 800 number to obtain the status of returns that had been submitted.

Between December 2012 and May 2014, the defendant mailed 25 false Forms 1040A to the IRS which listed her home address, or the address of another, as the address for a DOC inmate.   These returns claimed that the inmate named earned income and was entitled to a tax refund when he was not.   The total amount of the intended loss from these 25 returns is $72,441.  From these 25 returns, the IRS issued 7 refund checks in the total amount of $21,850.84.  The defendant mailed one check to an inmate's wife, and either cashed or asked others to cash for her the remaining checks.   She then divided the funds per co-defendant Raul Caraveo's direction and wired him and other inmates money via MoneyGram.  All of the tax returns mailed by the defendant and funds wired by the defendant to co-defendant Raul Caraveo and other inmates occurred within the State and District of Colorado.

Defendant admits to receiving approximately $8500 for her participation in the scheme.   During the time of the defendant's participation in the scheme, she discussed the scheme over the phone with co-defendants Pam Lucero and Eugene Chavez and was aware of their involvement in the scheme.  The defendant's involvement in the tax scheme continued until May 2014 when she was contacted by investigating agents.

## SENTENCING COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing

range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.      The appropriate Guideline is §2B1.1 .  The base offense level is 6.

B.      There is an eight-level increase pursuant to §2B1.1(b)(1)(E) (intended loss of more than $70,000 but less than $120,000).

C.      There are no victim-related, role-in-offense, obstruction, or multiple-count adjustments.

D.      The adjusted offense level is therefore 14.

E.      Pursuant to §3E1.1(a), provided the defendant does nothing inconsistent with accepting responsibility between the date of her plea and the date of sentencing, the defendant should receive the full two-level reduction for acceptance of responsibility.  The resulting total offense level would be 12.

F.      The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is ultimately determined by the Court. The information known to the parties, however, shows that the defendant has prior criminal history, but it appears that none of this history will result in the assessment of criminal history points. The defendant's criminal history category is therefore tentatively estimated to be Category I.

G.     Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

H.     The guideline range resulting from the estimated total offense level of 12, and the tentative Criminal History Category I, is 10-16 months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 10 months (bottom of Category I) to 37 months (top of Category VI).

I.      Pursuant to guideline §5E1.2, assuming the parties' estimated offense level of 12 is accurate, the fine range for this offense would be between $3,000 and $30,000, plus applicable interest and penalties.

J.      Pursuant to §5D1.2(a)(2), if the court imposes a term of supervised release, that term shall be not more than three years. The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

K.     The defendant agrees to pay to the IRS $21,850.84 in restitution.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties

-11-

regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

## VI.    ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date:    _8-12-15_    _____
                      Carolina Aragon
                      Defendant

Date:    _8-12-15_    _____
                      Robert W. Pepin
                      Attorney for Defendant

Date:    _8/12/15._   _____
                      Martha A. Paluch
                      Assistant U.S. Attorney